The opinion of the Court was delivered by
Todd, J.
This is a suit against the widow and heirs of the late William S. Pike, to compel the rendition of an account of his administration of the affairs of the plaintiff Company, aspresident of said Company, and to recover the sum of $280,235.32, the alleged amount of money and funds of the corporation received by him, and of his alleged liabilities for premiums collected, those he failed to collect, etc., and also for the delivery of the notes, hooks, seals, and other property of the Company held by him at Ms death.
*827 The character of the action, and the history of the litigation connected with the subject matter of the suit, will be fully seen by referring to cases 7051 and 7821 of this Court, reported in 32 An. 483, 492. The first of these cases was identical with the instant one, except that though the petition in that case charged the same liabilities against all the heirs, the present defendants, and for the same causes as in this case, William S. Pike, Jr., one of the heirs, a resident of the Parish of East Baton Rouge, where that suit was brought, was alone cited.
This Court, by its decree in that case, ordered the defendant therein, W. S. Pike, Jr., to render an account of the administration of the said William S. Pike, Sr., as president and treasurer of said Company, within sixty days after notice of the judgment.
The case 7821 mentioned, shows that in obedience to this decree, W. S. Pike, Jr., rendered the account called for, and pleaded against the action and demands of the corporation the prescription of ten years. This Court affirming the judgment of the District Court, overruled the plea of prescription, so far as related to specific property sought to be recovered, and sustained the plea against the moneyed demand.
In the instant case, the defendants are appellants from a judgment of the District Court, condemning them to pay $115,464.70, and ordering a rendition of an account of W. S. Pike’s administration of the Company’s affairs up to the time of his death, which occurred in 1875.
The defense relied on in this case is the one that prevailed in the previous case — the prescription of ten years against the moneyed demand.
The plaintiff’s counsel, whilst denying the correctness of the decision' in that case, urge that there are certain admissions in the answers of the defendant in this case, that not only takes it out of the principle of that decision, but actually precludes the defendants from entering the plea of prescription, and the Court from entertaining it, and this argument prevailed with the Court of the first instance, as shown by its decree now under Teview.
The admissions referred to we copy from the answer, and are as follows:
“ Defendants admit that from the 21st day of January, 1856, up to the said day of Wm. S. Pike acted as president and treasurer of the Southern Mutual Insurance Company, in the City of Baton Rouge, but aver that all the business of said corporation ceased in the year 1862, owing to the war then existing between the United States and the Confederate States, and that after that period no new risks were taken. That on the expiration of the practical workings of the corporation in the year 1863, there was on hand in Confederate money, the sum of one hundred and fifteen thousand, four hundred and sixty-four, and *828 70-100 dollars, which the said Pike was obliged to receive in tlio business of the Company, in the discharge of 1ns dirties as president and treasurer, that being' the only currency then in use in the State of Louisiana.
“That in the year 1863, the said Win. S. Pike removed to the City of New Orleans, where he resided until his death, in the year 1875. That when he came to this city, as aforesaid, he brought with him the only assets of the Company then existing, consisting of the said $115,-464.70 in Confederate currency, which still exists in kind in the possession of these Respondents, and which is herewith tendered in court to await the order of court.”
These admissions follow the general denial.
The answer in the other case decided by our predecessors, contained substantially the same averment of the conversion of the funds of the Company into Confederate money and the compulsory cause thereof; but there was not in that answer, as in this, a tender of the Confederate money, and it is claimed, besides, that in this answer there is virtually an admission that Pike was the president and treasurer of the Company up to the time of his death, and that during this time prescription could not run in his favor.
The admission is claimed to be found in this expression :
“ Defendants admit that from the 21st day of 'January, 1856, up to the said day of Win. S. Pike acted as president and treasurer of-the Southern Mutual Insurance Company.”
It is this language of the answer which, as stated, it is claimed is inconsistent with, and precludes the plea of prescription filed by defendants. The nature and effect of this part'of the answer are first to be considered.
It is an elementary rule of practice that where a particular thing is demanded in a suit, and the delivery of that thing is tendered by the defendant, in response to the petition, or where a liability is charged for a stated debt, and the money is sought tobe recovered, a tender of the sum claimed, or a part thereof, amount to judicial admissions touching the thing or the money demanded, that cannot, as a rule, be defeated by prescription or any other defense inconsistent with a liability for the thing or money tendered on the part of the defendant, and the right of th.e plaintiff to receive that thing or recover that money. It is quite as elementary, however, that the tender made must accord strictly with the demand.
Here the suit is for the restitution of certain specific objects, and to establish a liability for, and compel the payment of a large sum of money. As to the moneyed demand, the defendants deny any liability therefor, and, as wo construe it, not to weaken that denial, but to *829 strengthen it and to g'ive-a reason therefor, they say that the party, whom they are sued as representing, never liad in his possession and keeping the sunr of money charged, and which receiving possession and keeping is averred to be the very basis of their demand, but that only “ Confederate money ” was received by him through compulsion ; and which Confederate money, worthless though it be, is tendered to the plaintiff as the money and only money that Pike had received and kept as president and treasurer of said Company.
We do not think the admission on this point, and the tender referred to, have the force and effect contended for and constitute a confession on the part of the defendants that they owe to the plaintiff the amount of Confederate money so tendered, $115,464.70, in lawful currency of the United States, for which alone — and not for Confederate money— they were sued. And our conclusion is the same, whether we consider the entire answer as a whole, or the parts thereof separately. The admission that Confederate money had been received and the tender in kind of this money, could not reasonably be coustrued as a confession that the defendants, or the party they represented, owed a like amount in any kind or sum of money.
Nor do we view the language last quoted from the answer, as an admission that Pike was the acting president and treasurer of the Company up to the time of his death. Were we to construe the word “said,.” or “ said day,” occurring therein, as referring to the time or the day named in the petition, as'terminating the tenure of his office, his functions in the capacities charged, and which was the day of his death, as contended for by counsel, then we might give it that meaning, but we do not so construe it. It may be, strictly speaking, the proper grammatical construction, there being no time or day mentioned in the answer and, therefore, none therein to which the expression “said day” refers; and the day of Pike’s death being the day last named in the petition. But we must not rely solely on grammatical construction as an infallible test to arrive at the meaning of a word or sentence, but should rather gather that moaning from the entire context, and following this j uster rule, we find in other parts of that answer expressions which fully show that no such admission was intended. For instance, itis stated in theanswer “ that all the business of said corporation ceased in the year 1862, owing to the war, and after that period no new risks were taken.” “ That on the expiration of the practical workings of the corporation in 1863',” etc., language that forbids the idea of the Company being still in existence, and Pike acting as its president and treasurer, when he died. Construed as a whole, the clear intent of the answer was that the Company ceased its active operations and was no *830 longer a live Company after 1863, and then ended, practically, Pike’s connection with the Corporation as its president and treasurer.
■ Thus, we find nothing in the answer that operates as a bar to the plea of prescription, or in any way takes this case out. of the principles and the decision respecting this plea, enunciated in the case 7821, decided by our predecessors. In that case, this question of prescription against the identical demands preferred in this suit was determined, and determined upon issues and pleadings substantially the same as now presented, the only difference being that in that case, whilst all the parties now sued were charged with liability for the debt, only one of them, but he standing on the same plane, and having the same representative capacity as the others, was sued. There is no reason, then, why that decision should not be viewed as determining the same issue now presented upon the same demand, and should not control our conclusion respecting it, unless we find it so repugnant to the legal principles bearing on the issue, as to deprive it of all force and authority as a precedent. To show how completely it covers this case, we quote from that opinion delivered by Chief Justice Manning, as the organ of the Court,.as follows:
“ This Company was located at Baton Rouge. The last meeting of its directors was held there February 1, 1862. The statement made then by the elder Pike, as its president and treasurer, is the basis of this suit. He left that place permanently in 1863, or early in 1864. During his life no suit was instituted against him. The latest entry in the books was in 1864. The prescription pleaded by the defendant, as one of the heirs of his father, cannot be successfully opposed to the demand for any specific object, such as the books, etc., and it is conceded that it does not. But the cash or money in hand in 1864, and the liability for non-collection of the notes and premiums on policies, is on a different footing. By the conversion of the former, and by the failure to collect the latter, a debt was created and the prescription liberandi causa is applicable thereto.
“It cannot be seriously contended that Pike received the money as a special deposit. It was not expected that he should return it in kind, or distribute the identical money among those who might be entitled to it.
. “From themomeut when the business of the Company stopped, when he ceased to conduct it in any of the capacities he had assumed, the liability for the money or personal obligation arose, which was enforceable against Mm. This is equally true of the notes. If it was his duty to collect them, and he failed to perform it, whereby they were lost, his liability attached, and Ms creditors must enforce it in time, at their peril.*****
*831 “ We hold that the elder Pike’s liability attached in 1864; that his son and heir cannot prescribe the demand for specific property, but he can oppose the piescription liberandi causa to the claim for money, and to that of indebtedness for failure to collect the notes and premiums which it is alleged he should have collected. He lived twelve years after the business of the Company had ceased. No judicial demand was made during that time for the recovery of the debt created by his alleged laches, and his heir is protected from that demand by the lapse of time.”
This same demand is again urged by the same plaintiff and against the same defendants, and others joined with him in the same capacity, and by reason of its rejection by our predecessors, for the canse assigned, we must regard the disposition thus made of it as final and conclusive, and authoritative upon us.
It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed, and proceeding to render such judgment as should have been rendered, it is further ordered, adjudged and decreed, that the plaintiff recover of the defendants the specific objects described in the petition, such as the books, papers, seal, etc., of the Southern Mutual Insurance Company, and that the rest of the demand therein contained, be rejected, and the plea of prescription filed against the same as to said moneyed demand be sustained ; defendants to pay costs of the lower court, and plaintiff of this appeal.
Levy, J., absent.